# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GABRIEL R.[1]**, | Case No. 6:22-cv-1951-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARTIN O'MALLEY,** Commissioner of Social Security Administration, | |
| Defendant. | |

Katherine L. Eitenmiller and Katie Taylor, WELLS, MANNING, EITENMILLER & TAYLOR PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Gabriel Bono, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Gabriel R. (Plaintiff) brings this appeal challenging the decision of the Commissioner of

the Social Security Administration (Commissioner) denying Plaintiff's application for disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

insurance benefits (DIB) under Title II of the Social Security Act (the Act). The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands for an immediate calculation and payment of benefits.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on July 13, 2020, alleging a disability onset date of June 8,

2016. AR 396. Plaintiff was born on June 13, 1975. *Id.* Plaintiff was 40 years old as of the

alleged onset date. Plaintiff alleges that he suffers from major depressive disorder, generalized

anxiety disorder, post-traumatic stress disorder (PTSD), nightmares, type 2 diabetes, high blood

pressure, high cholesterol, trigger finger on his left hand,[2] pinched nerves on his left hand and

neck, and a bicep tear on the right arm. AR 434. Disability Determination Services denied his

applications initially and upon reconsideration. AR 268, 281. Plaintiff then requested a hearing

with an ALJ. Plaintiff had a telephonic hearing before ALJ B. Hobbs on December 9, 2021.

AR 235. The ALJ issued an opinion denying Plaintiff's claims on January 25, 2022. AR 217-26.

Plaintiff appealed the decision to the Appeals Council, which denied review, making the ALJ's

decision the final decision of the Commissioner. *See* AR 1. This appeal followed.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful
> activity? (2) Is the claimant's impairment severe? (3) Does the

---

[2] "Trigger finger" refers to a condition in which a finger gets stuck in a bent position. *Trigger Finger*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/trigger-finger/symptoms-causes/syc-20365100 (last visited Jan. 22, 2024).

> impairment meet or equal one of a list of specific impairments
> described in the regulations? (4) Is the claimant able to perform
> any work that he or she has done in the past? and (5) Are there
> significant numbers of jobs in the national economy that the
> claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and

other relevant evidence to assess and determine the claimant's "residual functional capacity"

(RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d

at 1100. At step five, the Commissioner must show that the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R.

§§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the

Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled.

*Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.  The ALJ's Decision**

The ALJ first determined that Plaintiff met the insured status requirement of the Act

through December 31, 2018. AR 219. At step one of the sequential analysis, the ALJ determined

that Plaintiff had not engaged in substantial gainful activity during the period from his alleged

onset date of June 8, 2016 through his date last insured. *Id.* At step two, the ALJ found that

Plaintiff suffers from the following severe impairments: unspecified anxiety disorder, PTSD,

adjustment disorder with mixed anxiety and depressed mood, major depressive disorder, left shoulder SLAP tear[3] with tendinitis, degenerative disc disease of the cervical and lumbar spine, left wrist arthritis, and obesity. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 220-21.

The ALJ next determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [H]e can never climb ladders, ropes, or scaffolds. He can occasionally crawl. He can frequently reach with the left upper extremity. He can understand, remember, and carry out simple and routine instructions and tasks that can be learned in 30 days or less. He can tolerate occasional contact with the public, and frequent interactive contact with co-workers or supervisors. He cannot work around special needs/disabled/challenged children or adults.

AR 221. At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a school bus driver, school bus monitor, fast food worker, or janitor through the date last insured. AR 224-25. At step five, the ALJ found that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. AR 225-26. Accordingly, the ALJ concluded that Plaintiff was not disabled from June 8, 2016, the alleged disability onset date, through December 31, 2018, the date last insured. AR 226.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly articulating her evaluation of the persuasiveness of the medical opinion evidence from five doctors; (B) improperly rejecting

---

[3] A "SLAP tear" refers to a shoulder injury known as "Superior Labrum, Anterior to Posterior tear." *SLAP Tear*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21717-slap-tear (last visited Jan. 22, 2024).

Plaintiff's subjective symptom testimony; and (C) improperly rejecting lay testimony without explanation. Plaintiff also argues that, considering the record as a whole, the ALJ's decision was not supported by substantial evidence. Plaintiff asserts that the improperly rejected evidence should be credited as true, and this case should be remanded for the immediate payment of benefits. The Commissioner concedes that the ALJ failed properly to consider the opinion evidence of one of Plaintiff's doctors. The Commissioner contends, however, that the errors in the ALJ's decision can be cured on remand for further administrative proceedings.

**A. Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by finding unpersuasive the medical opinions of five doctors: Dr. Gayle Windman, Ph.D.; Dr. Diane Weiss, MD, MPH; Dr. L. Scott Frazier, Ph.D.; Dr. Edmond Whiteley, MD; and Dr. Alan Moelleken, MD. In response, the Commissioner concedes that the case must be remanded to consider properly the opinion of Dr. Weiss, but effectively ignores Plaintiff's arguments as to the other four doctors specified in the opening brief. The Commissioner, in a footnote, acknowledges that Plaintiff assigned error to the ALJ's treatment of doctors other than Dr. Weiss, but states that "the ALJ on remand will necessarily address all the relevant medical opinions and statements as the regulations require." Accordingly, the Commissioner has waived any argument about the sufficiency of the ALJ's reasoning related to the medical opinion evidence from the other four doctors to which Plaintiff assigned error. *Jeffrey C. v. Kijakazi*, 2023 WL 4760603, at *3 (D. Or. July 26, 2023) ("The Government's failure to defend Plaintiff's allegations of error . . . is a concession of those alleged errors."); *see also Megan S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement" by failing to respond to Plaintiff's arguments other than generally to assert "harmless error"); *Alesia v. Berryhill*, 2018

WL 3920534, at *7 (N.D. Ill. Aug. 16, 2018) (finding that the Commissioner's "conclusory assertion and overly broad evidentiary citation" was not a sufficient argument and that the Commissioner therefore waived any argument that the ALJ's conclusion was legally sufficient). The ALJ's error with respect to evaluating the medical evidence for all five doctors is harmful.

## B.  Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ committed harmful error by failing fully to credit Plaintiff's physical and psychological symptom testimony without articulating specific, clear, and convincing reasons for doing so. The Commissioner responds that the ALJ properly discounted Plaintiff's symptom testimony because that testimony conflicted with objective medical evidence, evidence of improvement with treatment, and evidence of Plaintiff's activities.

### 1.  Applicable Law

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[4] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she

---

[4] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the

claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily

activities, and other information concerning the intensity, persistence, and limiting effects of an

individual's symptoms; and (3) non-medical source statements, considering how consistent those

statements are with the claimant's statements about his or her symptoms and other evidence in

the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall

even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See*

*Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical

evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d at 883.

### 2.  Discussion

Plaintiff's alleged disability onset date corresponds with a traumatic workplace assault. In

an incident that lasted for about 45 minutes, Plaintiff was assaulted by a special needs student on

a school bus that Plaintiff was operating. *See, e.g.*, AR 246, AR 994, AR 1199-200. Plaintiff told

a medical professional after the assault that by the time the student's father managed to restrain

the student and stop the assault, Plaintiff was "dripping with blood." AR 1085. Plaintiff suffered

multiple physical injuries, including bites, scratches, and bruises all over his body because of this

incident. *See, e.g.*, AR 1094. Plaintiff reported to a medical professional that this incident caused

injuries to his neck, left shoulder, lower back, and left wrist. *Id.* Plaintiff also suffered

psychological distress and reported that after the assault, he became irritable and impatient, was

more prone to angry outbursts, had trouble sleeping, and had nightmares and night terrors,

among other things. *See e.g.*, AR 1222.

In terms of Plaintiff's physical symptoms, Plaintiff testified that he is "in constant pain

throughout [his] whole body," and that he "constantly ha[s] to take naps" throughout the day

because of the medications he takes to help the pain. AR 243. Plaintiff testified that he needs help to get dressed and to shower, and that he cannot put on his shoes or wash his own hair. AR 244. In terms of Plaintiff's psychological symptoms, Plaintiff testified that his PTSD and anxiety make it so that he cannot be around "loud noises" and "[b]right lights," and that if Plaintiff is "around a lot of people, [he] get[s] anxiety so bad that it's overwhelming." AR 245. Plaintiff testified that he had panic attacks in enclosed rooms, and that on a "regular" day, he will have between two and four PTSD-related panic attacks. *Id.*

The ALJ focused on symptom improvement in Plaintiff's medical treatment records as reason to discount Plaintiff's physical symptom testimony. The ALJ noted that although Plaintiff "continued to experience lingering pain, weakness, and numbness through most of 2017, treatment notes indicate his symptoms improved 25-30% with physical therapy." AR 223. The ALJ explained that after Plaintiff lost his medical insurance in late 2017, he was no longer able to pay for additional physical therapy and instead availed himself of chiropractic treatments. *Id.* The ALJ cited medical notes from Plaintiff's chiropractor that also described "significant" symptom improvement. *Id.*

The ALJ cited a single instance in Plaintiff's medical records where Plaintiff reported that his pain had improved by 25 to 30 percent with physical therapy. *See* AR 1301. Plaintiff was only able to attend one more physical therapy session after that report, and the notes from the final session do not mention the previously reported 25 to 30 percent improvement in Plaintiff's pain symptoms. *See* AR 1299, 1300. Moreover, Plaintiff's chiropractic treatment records show a wide degree of variation in the severity of Plaintiff's physical symptoms. For example, Plaintiff reported to his chiropractor on February 16, 2018 that he was "having less pain" in certain areas, and that he was "feeling some improvement." AR 1906. During Plaintiff's next session on

February 27, 2018, Plaintiff reported "suffering constant return of moderately severe pain."

AR 1907. Plaintiff reported flare-ups and moderately severe pain during his next two sessions on

April 4, 2018 and April 18, 2018. AR 1908, 1909. In Plaintiff's session on April 25, 2018,

Plaintiff's chiropractor noted that Plaintiff's "pain bilaterally in the upper back has become a

little more intense," and that Plaintiff's "pain and discomfort in the neck on the left has

continued unabated." AR 1910. The waxing and waning of Plaintiff's symptoms continued into

the latter half of 2018. *See, e.g.*, AR 1919 (treatment notes from October 17, 2018 showing that

Plaintiff reports "moderately severe constant recurrence" of pain symptoms); AR 1920

(treatment notes from October 31, 2018 showing that Plaintiff reported "constant aggravation of

moderately severe pain"); AR 1922 (treatment notes from November 20, 2018 showing that

Plaintiff reported that he "has been suffering constant return of moderately severe pain").

Plaintiff's treatment records show that he was consistently reporting continuing pain and

exacerbation of symptoms throughout that period. Symptom improvement must be weighed

within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195,

1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional

symptom-free periods . . . are not inconsistent with disability.") (superseded by statute on other

grounds). Plaintiff's overall diagnostic picture is consistent with his physical symptom

testimony.

The ALJ also recited certain clinical observations and treatment notes from Plaintiff's

medical records, which the Court construes as the ALJ concluding that the objective medical

evidence did not support Plaintiff's claimed limitations. In particular, the ALJ cited Plaintiff's

presentation in a clinical setting as "neatly groomed," and displaying "a cooperative demeanor

and coherent, intelligent speech." AR 220. The ALJ also noted that Plaintiff "told one treatment

provider he was often depressed or anxious—but he could calm himself by reading the Bible." *Id.* The ALJ cited objective assessments that reflected "average" findings, and other objective findings that confirmed the psychological difficulties that Plaintiff reported. *Id.* Finally, the ALJ cited Plaintiff's "most recent treatment notes" from November 24, 2021, in which Plaintiff reported that he was not taking any prescription medication during the day to manage symptoms. AR 220-21 (citing AR 2639).

First, this reason cannot support the ALJ's discounting Plaintiff's testimony because a lack of support by the medical evidence standing alone, is not a clear and convincing reason. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (stating that the ALJ may not "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence") (quotation marks omitted). Second, a review of the record makes clear that the ALJ cherry-picked evidence to support the ALJ's findings. For example, the treatment notes in which Plaintiff's mental health provider indicated that Plaintiff managed to express himself intelligently and coherently also indicate that Plaintiff's affect was "depressed, anxious, and upset." *See* AR 1211. The ALJ also mischaracterized the treatment notes mentioning that Plaintiff could "calm himself by reading the Bible." Those treatment notes instead reflect a sense of concern from the mental health provider. *See* AR 1226 ("[Plaintiff's] thought processes were noted to be anxious, *particularly when revealing that he has to read the Bible in order to relax*." (emphasis added)). Other evidence cited by the ALJ is fully consistent with Plaintiff's psychological symptom testimony. For example, the treatment notes indicating that Plaintiff was neatly groomed during a session with a mental health provider is consistent with Plaintiff's testimony that his wife assists him with getting dressed and bathing. *See* AR 1210. As another example, the ALJ noted that "[s]tandardized testing confirmed difficulties with immediate and

delayed memories—but his memory of recent and remote events was generally intact." AR 220.
This statement is consistent with Plaintiff's reported difficulty with concentration and changes in
memory. *See* AR 1202.

The Commissioner also argues that the ALJ properly discounted Plaintiff's symptom
evidence because that evidence conflicted with Plaintiff's activities. The Commissioner states
that "[i]n particular, the ALJ noted that Plaintiff was able to attend to his own personal care
needs." ECF 14 at 8 (citing AR 221, 223, 1364). The Commissioner mischaracterizes the ALJ's
opinion. The ALJ did not specifically state that Plaintiff was able to attend to his own personal
care needs nor cite evidence in the record that could support such a finding. In fact, the ALJ
acknowledged that Plaintiff required assistance from his family for much of his personal care
needs. *See* AR 221 ("The claimant's spouse reported that his physical problems made it difficult
for him to put on shoes and socks, and that he often wears loose clothing to avoid asking family
members for assistance."). The Commissioner also argues that Plaintiff had "pondered training to
return to work as a drug and alcohol counselor." ECF 14 at 8. This also misstates the ALJ's
reasoning. Although the ALJ mentioned that Plaintiff had once hoped to become a counselor, the
ALJ acknowledged that Plaintiff testified that he was "no longer capable of pursuing such a
path." AR 222. Because neither of these two reasons highlighted by the Commissioner were
relied upon by the ALJ in making her disability determination, the Court must disregard them as
*post hoc* explanations from the Commissioner. *See Bray*, 554 F.3d at 1225 ("Long-standing
principles of administrative law require us to review the ALJ's decision based on the reasoning
and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what
the adjudicator may have been thinking."). Further, a single cited instance in which Plaintiff
reported to a treatment provider that "he wanted to work towards returning to school and

becoming a drug and alcohol counselor," AR 223, is not a clear and convincing reason to discount Plaintiff's symptom testimony.

The Court thus finds that the ALJ committed harmful legal error by failing fully to credit Plaintiff's physical and psychological symptom testimony without articulating specific, clear, and convincing reasons for doing so. Because, as discussed below, the Court finds the ALJ's errors related to the ALJ's treatment of medical opinion evidence and Plaintiff's symptom testimony require a remand for the calculation of benefits, the Court does not reach the other assignments of error that Plaintiff raises on appeal.

**C. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *See Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be

resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *See id.* at 408.

The Court has determined that the ALJ made the harmful legal errors of improperly evaluating the challenged medical evidence and Plaintiff's testimony. The Court now considers the remaining credit-as-true factors.

### 1. Fully Developed Record and Utility of Further Proceedings

Plaintiff argues that the record is fully developed. Plaintiff argues that remand would serve no purpose other than to allow the Commissioner to relitigate issues and evidence that have already been heard in their entirety. The Commissioner, in turn, does not argue that there is any specific utility in further administrative proceedings other than to provide an opportunity for the ALJ to reevaluate the medical opinion evidence. The Commissioner argues that the record contains conflicts related to Plaintiff's symptom testimony, but for the reasons explained above, the purported conflicts are not supported by substantial evidence, are not clear and convincing reasons for assigning less than full weight to Plaintiff's testimony, and do not support a remand for further proceedings. The Court agrees with Plaintiff that remanding this case for further administrative proceedings solely to give the Commissioner another bite of the apple on issues related to the medical opinion evidence rings of the "unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" for which the Ninth Circuit has expressed disapproval. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

### 2. Required Finding of Disability

Because the Court concludes that the record is free from conflicts and there is no useful purpose in further proceedings, the Court next considers whether the ALJ would be required to find Plaintiff disabled if the improperly discredited evidence were credited as true. *Dominguez*, 808 F.3d at 407. The improperly rejected medical opinion evidence and symptom testimony, if credited as true, would require a finding that Plaintiff is disabled.

The vocational expert (VE) testified that an individual who was off-task for more than 15 percent of the workday would be subject to supervisory intervention, and, if the off-task behavior was not corrected, termination. AR 254. The VE also testified that an individual who missed two or more days per month would be unable to sustain employment in the identified jobs. AR 256. Plaintiff points to medical opinion evidence that indicates that Plaintiff's conditions would preclude adequate performance in the workplace according to the VE's testimony. *See, e.g.*, AR 2589 (Dr. Whiteley's opinion that Plaintiff's psychological conditions would preclude performance for 15 percent or more of a seven-and-a-half-hour workday and would cause Plaintiff's absence for four or more workdays per month); *see also* AR 1228 (Dr. Windman's opinion that Plaintiff was "too beset by stress aggravated medical symptoms and too depressed and anxious to work"). Although these opinions were rendered after the date last insured, there is not substantial evidence in the record that Plaintiff's condition *deteriorated* as time passed from his traumatic event. Credited as true, this medical opinion evidence would establish Plaintiff's inability to conform to the requirements of employment to which the VE testified.

Moreover, Dr. Weiss opined before the date last insured that Plaintiff suffered from "marked" impairment in the categories of activities of daily living and social functioning and "extreme" impairment in the category of "deterioration or decompensation in complex or work-like settings/adaption to stressful circumstances." AR 1719. This evidence, credited as true,

would require finding that Plaintiff was disabled at step three of the sequential analysis. *See* AR 220 (explaining that to meet or medically equal the listings criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1 for a finding of disability, "the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning"). Finally, the VE testified that the jobs identified by the VE would be unavailable to an individual who needed to take two or three breaks per day that consisted of 30-minute naps. AR 256. As noted above, at the hearing, Plaintiff testified that he "constantly ha[s] to take naps" throughout the day because of his pain medications. AR 243. Credited as true, this testimony would also establish Plaintiff's inability to conform to the requirements of the identified jobs.

### 3.  Serious Doubts as to Plaintiff's Disability

The Commissioner argues that significant doubt exists as to Plaintiff's disability that precludes remanding this case for the immediate payment of benefits. The Commissioner specifically points to the ALJ's finding that Plaintiff's disabling symptom testimony was unpersuasive based on objective evidence and improvement with treatment. According to the Commissioner, because these are "significant conflicts," it is proper to remand for further proceedings. As discussed above, however, the ALJ's reasons for discounting Plaintiff's symptom testimony related to the cited objective evidence and evidence of improvement with treatment are not clear and convincing. Because the Commissioner raises no other arguments about why there are serious doubts as to Plaintiff's disabled status, the Court concludes that the credit-as-true test has been satisfied and that remand for an award of benefits is proper here.

**CONCLUSION**

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and

REMANDS for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 11th day of March, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 18 – OPINION AND ORDER